UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK O'BRIEN WILLIAMS,

       Plaintiff,

v.

HEALTH PROFESSIONALS, LTD,
LT. TAMMY STERNARD,
DR. KAREN BUTLER, and TIM MONTEE,

       Defendants.

Case No. 10-CV-152-JPS

ORDER

   This matter comes before the court on the defendants' motions for summary judgment.

   As an initial matter, the court will address the plaintiff's surreply brief and exhibits and the defendants' motion to strike. On December 15, 2011, the court denied the plaintiff's motion for extension of time and informed the plaintiff that the defendants' motions for summary judgment were fully briefed and there is no provision for a surreply. Nevertheless, the plaintiff filed a reply brief in opposition to the defendants' reply brief, along with additional exhibits; the defendants filed a motion to strike. The plaintiff's surreply brief is dated December 17, 2011, so it appears the plaintiff may have drafted it before he received the court's order. As a result, and because motions to strike are disfavored, Civil Local Rule 56(b)(9) (E.D. Wis.), the court will deny the defendants' motion to strike. To the extent the contents are relevant and admissible, the court will consider the plaintiff's surreply and exhibits in evaluating the defendants' motions for summary judgment.

Although the court will consider the plaintiff's materials to the extent they are relevant and admissible, the court will address the plaintiff's assertion in his response to the motion to strike that he is not familiar with the Civil Local Rules. This argument rings hollow because the plaintiff was provided with two copies of the local rules that pertain to motions for summary judgment, one with defendant Tammy Sternard's motion for summary judgment and one with the remaining defendants' amended motion for summary judgment. *See* Civil L.R. 56(a) (E.D. Wis.).

1.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or

declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2.  Factual Background

As the Seventh Circuit noted in *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), a person comparing the plaintiff's version of events with that of the defendant "would be forgiven for thinking that each was recalling an entirely different event."

> The standard of review governing summary judgment, however, resolves at least one question: we must accept all facts and reasonable inferences in the light most favorable to the non-moving party – here, the plaintiffs. We do not judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact.

*Id.* (Citations omitted). Thus, to the extent the parties' proposed findings of fact contradict, the court will view them in the light most favorable to the plaintiff.

2.1  Plaintiff's Proposed Findings of Fact

At the times relevant to this case, the plaintiff was being held at the Door County Jail (the "Jail") waiting to be sentenced on a violation of his parole. Before the plaintiff arrived at the Jail, he was under doctor's orders to: (1) check his blood sugar levels four times a day; (2) take two types of insulin; and (3) eat a special diet.

The plaintiff avers that he did not receive any insulin or special diet while at the Jail. Never before had a physician taken the plaintiff completely off insulin. Defendant Dr. Karen Butler told the plaintiff: "If your [sic] not

satisfied with the treatment your [sic] receiving here, then that's your problem not mine," and, if the Milwaukee Secure Detention Facility (MSDF) wanted you to receive insulin, then they should have sent some with you, you will not be receiving any insulin while you're at the Jail. (Affidavit of Plaintiff Mark O'Brien Williams, ¶ 6, ECF No. 70).

The plaintiff informed Dr. Butler and Nurse Montee of the symptoms he was having from high blood sugar: constant thirst, frequent urination, fatigue, weakness, and blurred vision caused by lack of insulin and improper diet. After a week, the plaintiff's symptoms got worse: vomiting, abdominal pains, nausea, numbness, and pain in the plaintiff's feet, painful eyes and loss of appetite. When the plaintiff got to Dodge Correctional Institution with these symptoms, the physician took the plaintiff off the course of treatment Dr. Butler had him on and put him back on the two types of insulin and a special diet.

2.2     Defendants' Proposed Findings of Fact

In May 2004, the plaintiff was diagnosed with diabetes, at the age of 35. At the time, he was incarcerated at the Racine Correctional Institution. From his diagnosis until late 2010, the plaintiff has been incarcerated at a variety of institutions (with the exception of a nine month release in 2006-2007). Each of these facilities managed the plaintiff's diabetes differently. Some treated the plaintiff with oral medications, others with regular insulin or long-acting insulin, and some providers felt no diabetes medications were needed. Before his transfer to the Jail, the plaintiff's blood sugars ranged from 94 to 511. He had multiple instances where he would go days or weeks refusing to take his diabetic medications. In February 2008, immediately

prior to his transfer to the Jail, the plaintiff was taking metformin, regular insulin, and Lantus, at MSDF.

The plaintiff also has a history of difficulty adjusting to new institutions. Medical records indicate a concern that he manipulated his diabetic condition to gain special privileges and note that the plaintiff demonstrated entitled behavior.

Defendant Health Professionals, Limited ("Health Professionals") provides one full time nurse and a part time general practice physician to the Jail. Nurse Montee worked first shift, and Dr. Butler visited the Jail once a week. Also, the physician (Dr. Butler) is on call for the Jail at all times.

Every inmate who comes to the Jail from another facility has a Health Transfer Summary. When an inmate first enters the Jail, either the nurse or Jail staff performs a Medical Intake Screening and a Mental Health Screening. This involves reviewing the Health Transfer Summary and filling out the Medical Intake and Mental Health Follow-Up Questionnaires based on the inmate's report, and filling out the medical and mental health intake screening forms.

The medical treatment provided to each inmate depends on his medical needs, if any. The Jail staff or nurse will call the physician to provide any necessary orders. If the inmate has a medical condition that warrants a physician visit, Nurse Montee schedules a visit with Dr. Butler for the next time she will be at the facility. Nurse Montee's practice was to schedule new diabetics to the Jail for a physician visit. If an inmate has a request, including a medical request, he fills out an inmate request form which indicates the type of staff the information is directed to. This request is first reviewed by

Jail staff, then given to the appropriate person. If the inmate has a grievance, it is investigated and addressed by Jail staff.

On the evening of February 11, 2008, the plaintiff was transferred from MSDF to the Jail to await sentencing after revocation. He arrived with a Health Transfer Summary Form which indicated he had diabetes and high blood pressure. This form listed multiple medications for the plaintiff, including Metformin. Significantly, that form did not indicate that the plaintiff had been receiving regular or long-acting insulin. The plaintiff was automatically placed on a diabetic diet by jail staff.

The booking officer consulted with Dr. Butler via telephone and documented her orders as: (1) test blood sugar twice a day, notify doctor if greater than 300; (2) Lithium, 300 mg once per day; (3) Zantac, 150 mg twice a day; and (4) aspirin once a day. Although Dr. Butler did not have any documentation regarding the plaintiff during this call, she was told that he was diabetic and had been on metformin.

As of February 11, 2008, Dr. Butler was not even aware that the plaintiff was claiming he had been on insulin. The defendants have provided a record of all of the plaintiff's blood sugar levels during his stay at the Jail, and none were over 300.

On February 12, 2008, Nurse Montee scheduled the plaintiff to see Dr. Butler because he was a new diabetic to the Jail. The plaintiff met with Dr. Butler and Nurse Montee on February 13, 2008. In light of the plaintiff's type II diabetes, Dr. Butler prescribed 1000 mg of metformin twice a day. She also increased the plaintiff's Lithium and added Wellbutrin, Haldol and Benadryl.

On February 15, 2008, Nurse Montee contacted Dr. Butler and reported the plaintiff's blood sugar levels, even though they had not reached

300. Dr. Butler ordered a second diabetic medication, Glyburide, which is often used in conjunction with metformin to stimulate a person's insulin production.

The plaintiff submitted a request on February 17, 2008, to discontinue the Lithium. The plaintiff wrote that it caused twitching and vomiting, blurry vision, and frequent urination. Nurse Montee met with the plaintiff about this request on February 19, 2008. At that time, the plaintiff said his physical symptoms were caused by high blood pressure, and Nurse Montee said he would inform the doctor.

The plaintiff again visited with Nurse Montee and Dr. Butler on February 20, 2008. The plaintiff renewed his request to be taken off Lithium. Dr. Butler proposed that the plaintiff decrease his dosage instead, and the plaintiff agreed to that plan. The plaintiff had no further requests, grievances, or medical visits before his February 25, 2008 transfer to Dodge Correctional Institution.

The plaintiff's only criticism of Nurse Montee is that he was a "yes man." Nurse Montee did not change the plaintiff's treatment or order different medications himself.

The plaintiff also admitted that he spoke with Dr. Butler three to four times during his stay and that she listened to his complaints. He contends that Dr. Butler told him that he needed to give the medications time to work. He admits that he threatened her with a lawsuit and raised his voice to her.

2.3     Plaintiff's Expert Witness

The plaintiff retained Dr. Shailendra B. Patel as his only expert in this case. Dr. Patel serves on the review panel for the National Institute of Diabetes and is internationally known in his field. He is the chief of

endicrinology at the Medical College of Wisconsin. He spends 70% of his time teaching and researching and deals with the most complicated diabetic patients. The last time Dr. Patel practiced general medicine was in England twenty-five years ago. He has never provided primary care in a jail or prison.

Dr. Patel does not give any opinions regarding Nurse Montee or Health Professionals. With regard to Dr. Butler, Dr. Patel concluded in his report that the medical care the plaintiff received for his diabetes while he was at the Jail from February 11, 2008, through February 25, 2008, was inappropriate and was not an acceptable level of care. In the report, Dr. Patel assumes that the plaintiff has Type I diabetes and discusses the plaintiff's symptoms while at the Jail in that context. Nevertheless, Dr. Patel opined that the plaintiff does not appear to have suffered any long term health impact from not receiving his insult therapy while at the Jail.

A deposition of Dr. Patel occurred on May 23, 2011, and he indicated that it was difficult to come to a conclusion in this case because there really was not much of a medical record to review.

Dr. Patel testified that the blood sugar level at which a patient becomes symptomatic varies from individual to individual, "but most people would be symptomatic when the blood sugars get to 300 and above." (Affidavit of Gina D. Meierbachtol, Ex. J, 28:1-3). He also testified that the metformin and glyburide the plaintiff received at the Jail were successful in decreasing the plaintiff's blood sugar levels and that the plaintiff's blood sugar levels were under better control at the Jail than they were after the plaintiff was transferred to the Dodge Correctional Institution and received insulin. Dr. Patel conceded that it was appropriate for Dr. Butler to rely on

the information in the Health Transfer Summary and, if she relied on that information, her care of the plaintiff was reasonable. Dr. Patel also found Dr. Butler's instruction that she be notified if the plaintiff's blood sugars exceeded 300 to be appropriate. He further testified that if the plaintiff was a Type II diabetic, it would be appropriate for Dr. Butler to start Metformin and then wait to see how the plaintiff adjusted to the Jail diet before adding additional medications. Dr. Patel approved of twice daily blood sugar checks.

Dr. Patel testified about the tools that are recognized in the medical field to treat diabetes and agreed that a doctor exercises professional judgment to decide which tool to use and in what amount. He also agreed that if Dr. Butler did not have the plaintiff's prior medical records, her treatment of a Type II diabetic was appropriate.

3. Discussion

    3.1    Tammy Sternard

With his opposition to the defendants' motion for summary judgment, the plaintiff filed a letter indicating that he was willing to dismiss his claims against defendant Tammy Sternard. He stated that he did not know how to argue or put forth a claim against her. It is too late for the plaintiff to voluntarily dismiss Sternard without consequences. Thus, the court will construe the plaintiff's letter as an indication that he has abandoned his claims against Sternard, and her motion for summary judgment will be granted. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (arguments not presented to the district court in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n. 3 (7th Cir. 2001) (same).

3.2 Karen Butler, Tim Montee, and Health Professionals Ltd.

The remaining defendants argue that they are entitled to summary judgment. They assert that there is no dispute of material fact and that the plaintiff will be unable to show that any of the defendants were deliberately indifferent to the plaintiff's serious medical needs. The defendants also submit that there is insufficient evidence that Dr. Butler or Nurse Montee were negligent in treating the plaintiff's diabetes and that there is no evidence that Health Partners was negligent or deprived the plaintiff of his constitutional rights in any way. Finally, the defendants contend that punitive damages are not warranted in this case.

In response, the plaintiff argues that he was provided with inadequate medical treatment at the Jail, which led to physical and emotional harm. The plaintiff charges that Dr. Butler refused to prescribe insulin or a special diet and only let him check his blood sugar level twice a day. He also contends that Nurse Montee would not provide insulin or a special diet and told the plaintiff he would have to work it out with Dr. Butler. Finally, the plaintiff alleges that Health Partners has a policy, practice, or custom of denying adequate medical care to inmates. He cites a long history of lawsuits against Health Partners by inmates and maintains that any layperson knows that diabetics need insulin and a special diet.

3.2.1 Eighth Amendment

In *Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008), the court set forth the legal standard for Eighth Amendment medical care claims:

> The states have an affirmative duty to provide medical care to their inmates. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). And the upshot of this duty is that the "deliberate indifference to [the] serious medical needs of

Page 10 of 18

Case 2:10-cv-00152-JPS Filed 02/29/12 Page 10 of 18 Document 82

> prisoners constitutes the 'unnecessary and wanton infliction of pain'" and violates the Eighth Amendment's prohibition against cruel and unusual punishments. *Id.* at 104, 97 S.Ct. 285. To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

The defendants concede, for the purpose of summary judgment, that they were acting under color of state law. They also concede that the plaintiff's diabetes constituted a serious medical need. Thus, the court must consider whether defendants Butler and Montee were deliberately indifferent to the plaintiff's need for treatment while he was housed at the Door County Jail.

> Deliberate indifference is a subjective standard. *Johnson*, 444 F.3d at 585. To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. *Id.* A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. *Roe*, 631 F.3d at 857. Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998). In other words, "[d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* (quotation marks omitted). A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Roe*, 631 F.3d at 857 (quotation marks omitted).

*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Nevertheless, a prisoner does not need to show that he was literally ignored, and some treatment does not foreclose his deliberate indifference claim. *Id.* (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

Dr. Butler treated the plaintiff's diabetes while he was at the Jail. Even if the court assumes, as the plaintiff avers, that the plaintiff did not receive a special diet, Dr. Butler ordered blood sugar checks twice a day and two different medications for the plaintiff's diabetes. The second medication was added in response to a concern from Nurse Montee over the plaintiff's blood sugar levels. Dr. Butler also saw the plaintiff both times she was at the Door County Jail during his two week stay and listened to his concerns.

Nurse Montee saw the plaintiff four times in nine days and also monitored the plaintiff's blood sugar levels. He reported his concern over an increase to Dr. Butler even before the blood sugar levels crossed the threshold she had set. This prompted the addition of a second medication for the plaintiff on February 15, 2008. The plaintiff's blood sugar levels lowered after he began taking the second medication.

Ultimately, the plaintiff disagrees with Dr. Butler's choice of treatment for his diabetes. However, neither the plaintiff's disagreement with Dr. Butler's medication choice nor Dr. Butler's difference of opinion with the plaintiff's previous physicians about which medication to prescribe supports a finding of deliberate indifference. Disagreement with medical professionals about treatment needs cannot sustain an Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Defendants Butler and Montee treated the plaintiff's diabetes while he was at the Jail. They exercised medical judgment in choosing his medication and treatment plans, *see Arnett*, 658 F.3d at 751, and they are entitled to summary judgment on the plaintiff's Eighth Amendment medical care claim.

### 3.2.2 Medical Negligence

The plaintiff also stated a claim for medical negligence, or medical malpractice. In his Amended Complaint, the plaintiff identified this claim as pertaining to Dr. Butler, Nurse Montee, and Health Professionals. However, in that section of the complaint, only the actions of Dr. Butler and Nurse Montee were mentioned. The court will consider the plaintiff's medical negligence claim to be against only Dr. Butler and Nurse Montee.

Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis.2d 223, 229, 434 N.W.2d 159, 161-62 (1988).

Unless the situation is one in which common knowledge affords a basis for finding negligence, medical malpractice cases require expert testimony to establish the standard of care. *Carney-Hayes v. Nw. Wisconsin Home Care, Inc.*, 2005 WI 118 ¶ 35, 284 Wis.2d 56, 699 N.W.2d 524 (2005).

The plaintiff has presented no expert testimony regarding the standard of care to be exercised by a nurse or the care provided by Nurse Montee. As a result, Nurse Montee is entitled to summary judgment on the plaintiff's medical negligence claims. *See Snyder v. Injured Patients and Families Compensation Fund*, 2009 WI App 86 ¶¶ 11-14, 320 Wis.2d 259, 768

N.W.2d 271 (If the patient required professional nursing care, then expert testimony as to the standard of that type of care is necessary in a medical malpractice action).

The court will evaluate only whether Dr. Butler was medically negligent in her treatment of the plaintiff. Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42 ¶ 17, 242 Wis.2d 507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie medical negligence claim, plaintiff must show that Dr. Butler failed to use the required degree of skill exercised by an average general practice doctor treating diabetes, that plaintiff was harmed, and that there is a causal connection between the failure and plaintiff's harm. Wis. J-I Civil 1023.

The defendants contend that Dr. Patel is not qualified to render an opinion regarding the standard of care applicable to a general practice physician in a correctional setting. However, "courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (citations omitted). It follows that a specialist may be qualified to testify about the treatment of diabetes by a general practitioner.

Under the *Daubert* framework, the district court is tasked with determining whether a given expert is qualified to testify in the case in question and whether his testimony is scientifically reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). "Determination on admissibility should not supplant the adversarial process; 'shaky' expert

Page 14 of 18

Case 2:10-cv-00152-JPS   Filed 02/29/12   Page 14 of 18   Document 82

testimony may be admissible, assailable by its opponents through cross-examination." *Gayton*, 593 F.3d at 616 (quoting *Daubert*, 509 U.S. at 596).

The court's primary concern regarding Dr. Patel's opinion is that he did not have all of the relevant information when he prepared his report. The court also notes that the copy of Dr. Patel's report that the plaintiff submitted is unsigned and undated. Nevertheless, at this stage, the court will consider Dr. Patel's report and deposition testimony in evaluating the defendant's motion for summary judgment on the plaintiff's medical negligence claim against Dr. Butler.

In his report, Dr. Patel concluded that the medical care the plaintiff received for his diabetes while he was at the Jail was inappropriate and was not an acceptable level of care. However, this report was based on the assumption that the plaintiff had Type I diabetes and was made without reviewing all of the plaintiff's medical records. Nevertheless, Dr. Patel opined that the plaintiff does not appear to have suffered any long term health impact from not receiving his insulin therapy while at the Jail.

At his deposition, after being provided with further information about the plaintiff's medical history (especially that he was a Type II diabetic) and his Health Transfer Summary, Dr. Patel found Dr. Butler's treatment of the plaintiff reasonable. Dr. Patel testified that most diabetics become symptomatic when their blood sugars get to 300 and above. He conceded that the metformin and glyburide the plaintiff received at the Jail were successful in decreasing the plaintiff's blood sugar levels and that the plaintiff's blood sugar levels were under better control at the Jail than they were after the plaintiff was transferred to the Dodge Correctional Institution and received insulin.

Even if the court construes Dr. Patel's report to establish a breach of the standard of care, the plaintiff must still show causation and damages. The plaintiff cannot do this because, according to Dr. Patel's report, the plaintiff "does not appear to have suffered any long term health impact from not receiving his insult therapy while incarcerated at the Door County Jail." Although Dr. Patel suggests that the worsening of the plaintiff's peripheral neuropathy in his feet could be related, this is just a possibility. There is no expert opinion that any damage resulted from the treatment the plaintiff received at the Jail.

Even construing the evidence in the light most favorable to the plaintiff, including the report and deposition testimony of Dr. Patel, the treatment the plaintiff received from Dr. Butler did not fall below the standard of care for treating the plaintiff's diabetes. Although Dr. Patel did not explicitly testify to a reasonable degree of medical certainty at the deposition, his testimony modified the opinion in his report. Moreover, at his deposition, when Dr. Patel had more of the relevant facts available to him, he deemed Dr. Butler's treatment of the plaintiff appropriate. Dr. Butler is entitled to summary judgment on this claim.

### 3.2.3 Negligent Training, Retention, and Supervision

Finally, the plaintiff stated a claim against Health Partners for negligent training and supervision of defendants Butler and Montee. Although the plaintiff's original *pro se* claim against Health Partners, which relied on *respondeat superior*, was dismissed at screening, the plaintiff's subsequent Amended Complaint, prepared by counsel, set forth a claim against Health Partners for negligent training, retention, and supervision.

The plaintiff contends that Health Partners has a policy, practice, or custom of denying adequate medical care to inmates. He says that there is a long history of inmate lawsuits against Health Partners. He also argues that any lay person knows that diabetics need insulin and a special diet. In his surreply, the plaintiff contends that Health Partner's contract with Door County provides that the county must bear the expense of all prescription medication for out of county inmates and detainees. He seems to imply that he was denied insulin because of the expense. He also asserts that Health Partners has a policy requiring the maintenance of complete and accurate medical records, though he does not indicate how this could lead to negligence by Health Partners as a corporate entity. Additionally, the plaintiff provides citations for five cases in which inmates made civil complaints against Health Partners. The plaintiff believes that there is enough evidence for a jury to conclude that Health Partners' actual practice towards the treatment of inmates was so inadequate that Health Partners was on notice at the time of the plaintiff's incarceration that he would be deprived of necessary care. The plaintiff maintains that Health Partners had a custom of repeatedly failing to follow proper procedures for training its employees.

However, these are conclusory allegations and are unsupported by evidence in the record. The plaintiff relies only on the actions of defendants Butler and Montee and does not produce any admissible evidence of a policy, custom, or practice of Health Partners as a corporate entity that deprived the plaintiff of his rights. Nor is there anything in the record to indicate that the actions of defendants Butler and Montee resulted from a lack of training or supervision. "Summary judgment is not a dress rehearsal or practice run; it

is the put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation marks and citations omitted). Additionally, since this court has concluded as a matter of law that neither Butler nor Montee were medically negligent or deliberately indifferent to the plaintiff's serious medical need, if follows that their training and supervision was not lacking. Defendant Health Partners is entitled to summary judgment on this claim.

Accordingly,

IT IS ORDERED that the defendants' amended motion for summary judgment (Docket #55) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the motion for summary judgment by Tammy Sternard (Docket #59) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the defendants' motion to strike the plaintiff's surreply brief (Docket #76) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment dismissing the plaintiff's claims against the defendants and this case.

Dated at Milwaukee, Wisconsin, this 29th day of February, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Page 18 of 18

Case 2:10-cv-00152-JPS    Filed 02/29/12    Page 18 of 18    Document 82